IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LESLEY A. HALL, and JULIE E. WEST, | ) | |
| | ) | |
| Plaintiffs, | ) | 4:06CV3069 |
| | ) | |
| v. | ) | |
| | ) | |
| NEMAHA, COUNTY OF, AUBURN, | ) | MEMORANDUM AND ORDER ON |
| CITY OF, BRENT LOTTMAN, CHRIS | ) | DEFENDANTS' MOTIONS TO DISMISS |
| BAKER, CHRIS ERICKSON, JOHN | ) | |
| DOES 1-3, BARBIE BAKER, GAIL | ) | |
| KELSEY, JOHN DOES 4-5, and TIERRA | ) | |
| ERICKSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On March 24, 2006, the plaintiffs, Lesley A. Hall and Julie E. West, filed an amended complaint against Defendants County of Nemaha, Nebraska (Nemaha County); City of Auburn, Nebraska (Auburn); Brent Lottman; Chris Baker; Chris Erickson; Barbie Baker; Gail Kelsey; Tierra Erickson; and "John Does" 1-5, in their individual and official capacities, alleging violations of 42 U.S.C. § 1983 and state law claims for wrongful death, negligence, false arrest, false imprisonment, and intentional infliction of emotional distress.  (See generally Compl., filing 1.)  The defendants have filed motions to dismiss the plaintiffs' state law claims.  (See filings 21, 24.)  For the following reasons, I find that the defendants' motions must be granted.

## I.   BACKGROUND

The complaint alleges as follows.  Plaintiffs Lesley A. Hall and Julie E. West are the ex-wife and mother, respectively, of the late Jeremiah Dalin Hall.  (See Compl., filing 1, ¶¶ 5-6.) They have filed the instant complaint in their capacities as Jeremiah's personal representatives. (See id. ¶ 8.)  Defendants Nemaha County and Auburn are political subdivisions of the State of Nebraska and are "responsible for the operation and maintenance of the Nemaha County Detention Center."  (Id. ¶¶ 10-11.)  Defendant Brent Lottman is the Sheriff of Nemaha County

1

and "was administrator of the Nemaha County Detention Center and of the Nemaha County Sheriff's Office."  (Id. ¶ 12.)  Defendants Chris Baker, Chris Erickson, and John Does 1-3 are law enforcement officers who were employed by either Nemaha County or Auburn on April 23, 2004.  (See id. ¶ 13.)  Defendants Barbie Baker, Kelsey, Tierra Erickson, and "Does" 4-5 are dispatchers and jailers who were employed by either Nemaha County or Auburn "for the purpose of supervis[ing] . . . detainees in Nemaha County Detention Center on April 23, 2004."  (Id. ¶ 14.)

On or about April 23, 2004, Jeremiah was traveling by car in Nemaha County.  (Compl., filing 1, ¶ 15.)  At approximately 4:30 a.m., Chris Baker, Chris Erickson, and Does 1-3 stopped the car based upon a tip that Jeremiah was using the car to transport methamphetamine.  (Id. ¶ 16.)  Jeremiah was indeed carrying an unknown quantity of methamphetamine, but he swallowed it when the officers stopped his vehicle.  (See id. ¶ 17.)  The officers searched the interior of the car and its occupants, but they found no methamphetamine or other controlled substances.  (Id. ¶ 18.)  Nevertheless, Chris Baker, Chris Erickson, and Does 1-2 arrested Jeremiah and the car's other occupant "based on the officers' observation of [Jeremiah's] behavior and their actual knowledge that [Jeremiah] was at that time under the influence of methamphetamine."  (Id. ¶ 19.)

Jeremiah was transported to the Nemaha County Detention Center in Auburn, and he was placed in a cell at approximately 5:00 a.m.  (Compl., filing 1, ¶¶ 20-21.)  At approximately 6:00 a.m., Jeremiah "loudly begged to be taken to a hospital . . . and complained that his heart was racing and he could not see."  (Id. ¶ 22.)  Barbie Baker and Does 4-5 heard Jeremiah and told him that an officer would take him to the hospital.  (See id.)  "As time passed and no one returned to his cell, [Jeremiah] began to scream that he needed to go to the hospital because he was having trouble breathing and could not see."  (Id. ¶ 23.)  No one responded to Jeremiah, but his screams ceased at approximately 7:00 a.m.  (Id.)

At approximately 7:50 a.m., Kelsey, Tierra Erickson, and Does 4-5 "asked [Jeremiah] through the bars of his cell whether he was all right."  (Compl., filing 1, ¶ 24.)  After Jeremiah failed to respond, Chris Baker entered the cell and discovered that Jeremiah had no pulse and was not breathing.  (Id. ¶ 25.)  Chris Baker did not perform CPR, but instead stated, "He shouldn't eat what he cooked."  (Id.)  At some point thereafter, it was determined that Jeremiah died following

2

"an overdose of ingested methamphetamine."  (Id. ¶ 26.)

On March 24, 2006, the plaintiffs filed a four count complaint against the defendants. (See generally Compl., filing 1.)  Count I alleges that "[w]ith deliberate indifference and with conscious disregard of a substantial risk of serious harm to [Jeremiah's] health and safety, the Defendants failed, omitted and neglected to provide [Jeremiah] with prompt, reasonable and necessary medical treatment for his condition while he was in their custody and control," in violation of 42 U.S.C. § 1983.  (Id. ¶ 31.)  Count II alleges that Defendants Nemaha County, Auburn, and Brent Lottman failed to properly train their employees to determine when to provide medical care to detainees, failed to supervise Barbie Baker, and failed to implement proper policies, all in violation of § 1983.  (See id. ¶¶ 34-41.)  Count III alleges that "[t]he failure of Defendants to respond to [Jeremiah's] repeated requests to be sent to a hospital and his repeated complaints about his heart and his eyesight are not reasonably related to a legitimate government purpose and show an intent on the part of the Defendants to punish [Jeremiah] for ingesting or manufacturing methamphetamine," in violation of § 1983 and the Fifth and Fourteenth Amendments.  (Id. ¶ 43.)  Count IV alleges that the defendants caused Jeremiah's death "by their intentional and negligent acts or omissions" and "breached the duty of care they owed to [Jeremiah] as a person in their custody and control."  (Id. ¶¶ 47-48.)  It also alleges that "[t]he joint and concurrent negligence of Defendants arises due to their failure to supervise, protect, and diagnose Jeremiah . . ., their failure to follow or implement proper procedures, and their affirmative actions as alleged above that amount to false arrest and imprisonment, negligent infliction of conscious pain and suffering, a failure to [sic] and intentional infliction of emotional distress [upon Jeremiah]."  (Id. ¶ 49.)

On May 19, 2006, Nemaha County, Lottman, Chris Baker, Chris Erickson, Barbie Baker,[1]

---

[1]The defendants' motion refers to Barbie Baker as "Barbara Baker."  (See filing 21 at 1.) In the interest of consistency, I shall refer to this defendant by the name that appears in the caption.

Kelsey, Tierra Erickson,[2] and Does 1-5 filed a motion to dismiss the plaintiffs' state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6), the Nebraska Political Subdivision Tort Claims Act (the Tort Claims Act), Neb. Rev. Stat. §§ 13-901 to 926 (2005), "and other applicable law." (See filing 21.)  On May 24, 2006, Auburn filed its own motion to dismiss the plaintiffs' state law claims pursuant to Rule 12(b)(6).  (See filing 24.)  My analysis of the defendants' motions follows.  I note parenthetically that the plaintiffs have not responded to either motion.

## II.    STANDARD OF REVIEW

"[A] motion to dismiss a complaint [pursuant to Rule 12(b)(6)] should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citation omitted); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In resolving such motions, all well-pleaded allegations in the complaint must be taken as true, and the complaint and "all reasonable inferences arising therefrom" must be weighed in favor of the plaintiff. Morton, 793 F.2d at 187.

## III.    ANALYSIS

The defendants argue that the plaintiffs' state law claims must be dismissed due to the plaintiffs' failure to comply with the Tort Claims Act.  (See filing 22 at 3, 4-8; filing 25 at 3, 5-13.)  I agree.

The Tort Claims Act provides that "no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act."  Neb. Rev. Stat. § 13-902.  The term "tort claim" is defined as "any claim against a political subdivision for money only . . . on account of personal injury . . . caused by the negligent or

---

[2]The defendants' motion refers to Tierra Erickson as "Tara Erickson."  (See filing 21 at 1.)  Again, in the interest of consistency, I shall continue to refer to the defendant by the name that appears in the caption.

4

wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such . . . injury . . . ."  Neb. Rev. Stat. § 13-903(4).  There is no dispute that Nemaha County and Auburn are "political subdivisions," (see Compl., filing 1, ¶¶ 10-11), and Count IV clearly alleges "tort claims" within the meaning of section 13-903(4).  Therefore, to the extent that the plaintiffs' state law claims are raised against Nemaha County, Auburn, or the other defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978))), the claims alleged Count IV are governed by the Tort Claims Act.

Nebraska Revised Statute section 13-910(7) states that the Tort Claims Act "shall not apply to . . . [a]ny claim arising out of . . . false arrest [or] false imprisonment."  This exclusion provides a "complete defense" to the plaintiffs' "official capacity" claims of false arrest and false imprisonment.  See Stagemeyer v. County of Dawson, Nebraska, 205 F. Supp. 2d 1107, 1117-18 (D. Neb. 2002) (quoting Hatcher v. Bellevue Volunteer Fire Dep't, 628 N.W.2d 685, 695 (Neb. 2001)); Harris v. Omaha Housing Authority, 698 N.W.2d 58, 65 (Neb. 2005).  Therefore, the plaintiffs' false arrest and false imprisonment claims must be dismissed insofar as they are brought against the defendants in their official capacities.

The plaintiffs' "official capacity" state law claims based upon negligence, wrongful death, and intentional infliction of emotional distress must be dismissed as well.  Nebraska Revised Statute Section 13-905 provides, "All tort claims under the Political Subdivisions Tort Claims Act . . . shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision."  "[T]he filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Act."  Estate of McElwee v. Omaha Transit Authority, 664 N.W.2d 461, 466 (Neb. 2003) (citing Keller v. Tavarone, 628 N.W.2d 222 (Neb. 2001)).  If a political subdivision asserts that a plaintiff has

failed to comply with section 13-905, "the plaintiff has the burden to show compliance with the notice requirement." Id. (citing Millman v. County of Butler, 458 N.W.2d 207 (Neb. 1990)). See also Weeder v. Central Community College, 691 N.W.2d 508, 514-15 (Neb. 2005) (holding that under the new Nebraska Rules of Pleading in Civil Actions, a defendant can raise a plaintiff's failure to comply with the notice requirement in a motion to dismiss); but see Wise v. Omaha Public Schools, 714 N.W.2d 19, 22 (Neb. 2006) (indicating that the "issue of noncompliance with the notice provisions" of the Tort Claims Act cannot be asserted in a motion to dismiss pursuant to Nebraska Rule 12(b)). Indeed, the Nebraska Supreme Court has held that under the state's former rules of pleading, "the failure to allege compliance with [the Tort Claims Act's] provisions is a fatal defect." Employers Reinsurance Corp. v. Santee Public School District No. C-5, 438 N.W.2d 124, 127 (Neb. 1989). See also Zimmerman v. Douglas County Hosp., 563 N.W.2d 349, 352 (Neb. 1997).

The complaint does not allege that the plaintiffs have complied with the notice requirements of the Tort Claims Act. The defendants have asserted a defense based upon the plaintiffs' failure to comply with those requirements, and the plaintiffs have offered no response. Therefore, insofar as the defendants are sued in their official capacities, I must dismiss the plaintiffs' state law claims based upon negligence, wrongful death, and intentional infliction of emotional distress. See Shrum ex rel. Kelly  v. Kluck, 85 F. Supp. 2d 950, 954 (D. Neb. 2000).

The requirements of the Tort Claims Act also apply "where an individual is sued in his or her individual capacity, but is performing within the scope of employment. Cole v. Wilson, 627 N.W.2d 140, 144 (Neb. Ct. App. 2001) (citing Bohl v. Buffalo County, 557 N.W.2d 668 (Neb. 1997); Kuchar v. Krings, 540 N.W.2d 582 (Neb. 1995)). Thus, in light of the exclusion set forth in section 13-910(7), the defendants cannot be held liable in their individual capacities for false arrest or false imprisonment unless the plaintiffs can show that the defendants acted outside the scope of their employment. See Stagemeyer, 205 F. Supp. 2d at 1118-19. Since the complaint does not allege that the defendants acted outside the scope of their employment, (see generally Compl., filing 1), I find that the plaintiffs can prove no set of facts that would entitle them to relief, and the false arrest and false imprisonment claims against the defendants in their individual capacities must be dismissed.

6

I must also dismiss the plaintiffs' "individual capacity" claims based upon negligence, wrongful death, and intentional infliction of emotional distress.  Section 13-920 provides, in part, that "[n]o suit shall be commenced against any employee of a political subdivision for money on account of . . . personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905."  As the defendants correctly note, the plaintiffs have not alleged that the defendants acted outside the scope of their employment or that a claim was submitted to the "governing body" in accordance with section 13-905.  In light of these shortcomings, the plaintiffs can prove no set of facts that would entitle them to relief on their "individual capacity" claims of negligence, wrongful death, or intentional infliction of emotional distress.

**IT IS ORDERED** that the defendants' motions to dismiss, filing 21 and filing 24, are granted, and Count IV of the complaint is dismissed.

Dated June 28, 2006.

BY THE COURT


s/ Warren K. Urbom
United States Senior District Judge

7